UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH H.,[1] | ) |
| | ) No. 20 CV 7604 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
| | ) |
| | ) January 23, 2023 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Elizabeth H. seeks disability insurance benefits ("DIB") asserting that she is disabled by kidney disease, clotting disorder, Ehlers-Danlos syndrome, asthma, anxiety, and PTSD. Before the court are the parties' cross motions for summary judgment. For the following reasons, Elizabeth's motion is granted, and the government's is denied:

**Procedural History**

Elizabeth filed her application for DIB benefits in March 2018, alleging disability as of January 6, 2007. (Administrative Record ("A.R.") 15, 140-41.) She later changed her disability onset date to June 2, 2010, so the applicable period runs from then until March 31, 2011, her date last insured. (Id.) Her application was denied initially and upon reconsideration at the administrative level. (Id. at 15, 52-67.) She then sought and was granted a hearing before an Administrative Law Judge

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect her privacy to the extent possible.

("ALJ"). (Id. at 15, 82-97.) Elizabeth appeared with her attorney at the September 2019 hearing, and both Elizabeth and a vocational expert ("VE") testified. (Id. at 15, 31-51.) The ALJ ruled in October 2019 that Elizabeth was not disabled. (Id. at 15-23.) The Appeals Council denied Elizabeth's request for review, (id. at 1-5), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Thereafter, Elizabeth filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 5).

## Facts

Elizabeth attended college for two years and worked as an office manager and paralegal. (A.R. 35-36, 140-41, 231-35.) She states that after she turned 28 years old, she became unable to work because of various ailments. (Id.) She submitted documentary and testimonial evidence to support her claim.

### A. Medical Evidence

Shortly after Elizabeth's alleged disability onset date of June 2, 2010, she visited a family medicine practitioner and complained of pain related to a possible urinary tract infection. (A.R. 318-19.) On examination, she was "well developed, well nourished, [and] in no apparent distress." (Id. at 319.) On June 10, 2010, however, Elizabeth presented at the hospital with right flank pain, and a CT scan revealed ureteral and kidney stones, as well as "a tight right ureteropelvic junction." (Id. at 255-56, 361.) A stent was inserted and stone manipulation performed in response.

2

(Id.) In July 2010 her provider noted during a follow-up appointment that Elizabeth had a possible ureteropelvic junction obstruction.[2] (Id. at 243.)

An August 4, 2010 MRI showed two large stones in her right renal pelvis. (Id. at 255.) Thereafter, Elizabeth saw her urologist and complained of "significant right flank pain," a chronic headache, and blurred vision. (Id.) She underwent a right percutaneous nephrolithotomy later that month and was discharged two days later. (Id. at 264-65.) Then on November 30, 2010, Elizabeth underwent a cysto-renal stent placement and robotic right pyeloplasty. (Id. at 313.) A few weeks later, she reported "persistent pain from the stent," as well as anxiety attributable to an upcoming wrist MRI and the holidays, for which she sought medication. (Id.) Elizabeth underwent a cystoscopy at the end of December 2010 to remove the stent. (Id. at 341-42.) A few months later, a March 2011 MAG3 renal scan revealed "[f]indings consisting with [a] right [ureteropelvic junction] obstruction," which was "promptly relieved by the administration of intravenous Lasix." (Id. at 338-39.)

Treatment records also note Elizabeth's past medical history of anxiety, asthma, depression, and anorexia. (See, e.g., id. at 319.) In a March 2018 letter, Elizabeth's treating physician, Dr. Sapan Patel, opined that Elizabeth is unable to work because of complications related to: antithrombin 3 deficiency; protein C deficiency; history of renal artery occlusion; history of transient ischemic attack;

---

[2] "Ureteropelvic junction obstruction" is a condition in which blockage results in decreased flow of urine down the ureter and an increase of pressure inside the kidney, causing deterioration of kidney function over time. *Ureteropelvic Junction Obstruction*, Johns Hopkins Med., https://www.hopkinsmedicine.org/ health/conditions-and-diseases/ureteropelvic-junction-obstruction (last visited Jan. 20, 2023).

3

current use of long-term anticoagulation; mild, persistent asthma without complication; recurrent nephrolithiasis; recurrent urinary tract infection/pyelonephritis; migraine; Ehlers-Danlos syndrome; nephrectomy; history of left hip impingement with surgical repair; history of eating disorder; and anxiety. (Id. at 365.) Elizabeth's therapist, Janis Ricely, who began treating her in February 2017, noted in August 2019 that Elizabeth suffers from anxiety and PTSD. (Id. at 849-50.) Ricely opined that Elizabeth suffers marked restrictions in daily activities and social interactions. (Id.)

**B.**     **Hearing Testimony**

Elizabeth testified that although she previously worked as an office manager and paralegal, she lost jobs because of infections and hospitalizations relating to her impairments. (A.R. 37.) In terms of daily activities, Elizabeth said she cannot "[s]tand[] up and do[] anything for any period of time," such as wash dishes or make her bed, because of dizziness and nausea. (Id. at 39.) In 2010 she trained for an Ironman triathlon but did not participate in the event.[3] (Id. at 41.) Although she enjoys horseback riding and pole dancing, Elizabeth said she has not done either activity within the past five or six years, and did not ride horses between June 2010 and March 2011, the period relevant to her claim. (Id. at 41, 47.)

The ALJ posed hypotheticals to the VE regarding whether someone with a specific residual functional capacity ("RFC") and Elizabeth's age, education, and past work could perform work in the national economy. (Id. at 44.) One hypothetical

---

[3] The record does not include an explanation for her non-participation.

4

concerned an individual with an RFC including the following limitations: avoid concentrated exposure to lung irritants and work hazards, such as unprotected heights and dangerous moving machinery; no operation of motor vehicles for work purposes; no contact with the public and no more than occasional contact with coworkers and supervisors; and no requirement to engage in any teamwork situations. (Id.) The VE testified that a person with such an RFC could perform light work in the national economy such as housekeeper, routing clerk, and linen grader or sorter. (Id. at 44-45.) However, if the individual were off task more than 15% of the time, missed work more than two days per month, or required extra breaks on a regular basis, no work would be available. (Id. at 45.)

**C.     The ALJ's Decision**

The ALJ followed the standard five-step evaluation process, and at step one determined that Elizabeth had not engaged in substantial gainful activity during the relevant period. (A.R. 17.) At step two, the ALJ found that Elizabeth suffers from medically determinable impairments of asthma, clotting disorder, headaches, visual disorder, back tenderness, hearing disorder, renal disorder, and wrist disorder—but has no severe impairments. (Id. at 17-23.) The ALJ therefore concluded at step two that Elizabeth was not disabled. (Id. at 23.)

## Standard of Review

When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This is a deferential standard that precludes the court from reweighing the evidence or substituting its judgment for that of the ALJ's, allowing reversal "only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted); *see also Hahn v. Kijakazi*, No. 22-1106, 2022 WL 6628832, at *3 (7th Cir. Oct. 11, 2022). "Even if reasonable minds could disagree on whether a claimant is disabled based on the record evidence, a reviewing court must affirm the Commissioner's decision to deny benefits if the decision is adequately supported." *Hahn*, 2022 WL 6628832, at *3 (citation omitted).

In this Circuit the ALJ also must "provide a 'logical bridge' between the evidence and his conclusions," *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021); *see also Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. Aug. 27, 2021) ("[W]e will not 'nitpick[]' the ALJ's decision, but rather give the opinion a 'commonsensical reading,' focusing on whether the ALJ built a 'logical bridge from the evidence to his conclusion.'" (citation omitted)). Accordingly, this court assesses whether the ALJ's analysis meets the longstanding logical bridge requirement when applying the substantial evidence standard.

## Analysis

Elizabeth argues that the ALJ erred by: (1) finding at step two that her impairments were non-severe and ending the sequential analysis without considering the effect of the combination of her impairments on her ability to work; and (2) not considering her mental impairment of anxiety. (R. 12, Pl.'s Br.) The government responds that the ALJ supported her step-two decision with substantial evidence and asserts that Elizabeth is asking the court "to reweigh the evidence [to] find the combination of her impairments severe." (R. 16, Govt.'s Resp.)

First, under 20 C.F.R. § 404.1520(c), "severe" means a significant limitation that interferes with a claimant's ability to work. Courts have construed "severe" to mean only more than "slight." *See, e.g.*, *Colson v. Colvin*, 120 F. Supp. 3d 778, 788 (N.D. Ill. 2015) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). Thus, a "disability claimant can be considered as not suffering from a severe impairment only if the impairment is a slight abnormality having only a minimal effect on a person's ability to perform the full range of work-related activities." *Chapman v. Barnhart*, 189 F. Supp. 2d 795, 804 (N.D. Ill. 2002).

The ALJ found at step two that Elizabeth suffers from eight medically determinable impairments: asthma; clotting disorder; headaches; visual disorder; back tenderness; hearing disorder; renal disorder; and wrist disorder. (A.R. 17.) To find these impairments "medically determinable," the ALJ had to determine first that they could "be shown by medically acceptable clinical or laboratory diagnostic techniques[.]" (Id. at 18.) Despite having done so, the ALJ rejected the notion that

7

any of the impairments were "severe," such that they amounted to no more than "a slight abnormality or a combination of slight abnormalities," in her view. (Id. at 19.)

The court agrees with Elizabeth that remand is necessary. The medical record shows that with regard to Elizabeth's renal disorder alone, during the relevant period she presented to the hospital and underwent surgical procedures relating to ureteral and pelvic stones and a ureteropelvic joint obstruction on at least three occasions, as the ALJ noted in her decision. (Id. at 20-21.) CT and MRI scans confirmed the presence of stones and an obstruction. (Id.) And treatment records reflect complaints of pain Elizabeth suffered related to urinary tract infections and stones. (Id.) A comparison of October 2010 and March 2011 scans show that the degree of obstruction had worsened, and although the administration of Lasix improved Elizabeth's pain level, there is no indication that it resolved her pain. (Id. at 339-40.) Her subsequent records from 2013 show "recurrent infections" and "numerous stent placements." (Id. at 876, 887 (noting repeat pyeloplasty in April 2013, hospitalization for urosepsis in August 2013).) Moreover, Dr. Patel's 2018 opinion endorses diagnoses of recurrent urinary tract infections, nephrectomy, and a history of renal artery occlusion. (Id. at 365.) While this court cannot reweigh evidence, *Deborah M.*, 994 F.3d at 788, it also cannot affirm a decision that lacks the support of substantial evidence, *Burmester*, 920 F.3d at 510. Here, the record simply does not show that Elizabeth's impairments or the combination of those impairments was *de minimus* or non-severe. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016).

Further troubling is the ALJ's reliance on other steps of the sequential sequence to support her step-two decision without assessing how Elizabeth's impairments—or the combination thereof—would affect her ability to sustain full-time, competitive work. For example, to support her finding of non-severity at step two, the ALJ discussed how Elizabeth's impairments do not meet or medically equal applicable listings. (A.R. 19-22.) But as Elizabeth points out, "the mere failure to meet a listing does not lead to the conclusion that there are no work preclusive limitations." (R. 12, Pl.'s Br. at 8.) The ALJ also discussed how Elizabeth's daily activities—namely, her ability to train for a triathlon in 2010—undermined her subjective symptom allegations regarding the severity of her impairments. (A.R. 19.) And the ALJ dismissed as non-persuasive Dr. Patel's opinion without discussing the supportability of the opinion or its consistency with the medical evidence of record. (Id. at 22-23.)

Second, the ALJ did not consider the effect Elizabeth's anxiety would have on her ability to work, if at all. Instead, the ALJ noted that Elizabeth "did not allege that she had a mental medically determinable impairment on or before the date last insured." (A.R. 23.) Because Dr. Patel and Ricely endorsed a diagnosis of anxiety, and the record reflected such an impairment during the applicable period, (id. at 313-14, 365, 849-50), on remand the ALJ should consider Elizabeth's anxiety and how it affected her mental functioning.

## Conclusion

For the foregoing reasons, Elizabeth's motion for summary judgment is granted, the government's is denied, and this matter is remanded.

**ENTER:**

**Young B. Kim
United States Magistrate Judge**